## The Green Ridge Railroad Company *vs.* Harman Brinkman.

*Action for Damages—Art. 77, sec. 1, of the Code—Railroad Company—Fire caused by Railroad Engine—Evidence— Usage—Negligence—Prayers and instructions.*

An action was brought against a railroad company to recover damages resulting from a fire alleged to have been occasioned by the engines and locomotives of the defendant being negligently run and controlled on the line of its road. The plaintiff offered only indirect proof that the fire was caused by the engine of the defendant. The defendant then offered to prove that among the farmers in that region it was a custom or usage to set fire to the leaves and underbush at that season, so as to improve the pasturage; and that annually, during many years before the defendant's road was built, such fires had been started in that valley and the adjacent mountains. HELD:

That the evidence was inadmissible.

Where a railroad company is sued for damages resulting from a fire communicated by the defendant's engine, proof that the fire so originated creates the presumption of negligence, and the *onus probandi* under the Code, Article 77, section 1, is on the defendant to show the contrary.

The fact that the engine habitually scattered sparks to such an extent as to endanger combustible material along the line of the road, is one from which the jury may find negligence on the part of the defendant.

A prayer is properly rejected, which contains no instruction not already contained in a prayer previously granted.

The reproduction and repeated presentation of the same legal proposition in various prayers, by a mere transposition of phraseology, are not only unnecessary, but manifestly tend to confusion, and should not therefore be encouraged by judicial sanction.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—At the trial the plaintiff offered the four following prayers :

1. That if the jury believe that the plaintiff's property was damaged by fire communicated by defendant's engine, then they must find for the plaintiff unless they further find that the injury complained of was committed without any negligence on the part of the defendant or its agents, or unless they believe that the plaintiff or his agents acted negligently and without due care, and thereby contributed to said injury.

2. That if the jury believe from the evidence that the plaintiff's property was damaged by fire communicated from the defendant's engine, then such fire is *prima facie* evidence of negligence on the part of the defendant.

3. That if the jury believe from the evidence that the defendant ran an engine upon its road which, at the time of the fire complained of, habitually scattered sparks of fire from its smoke-stack to such an extent as to endanger combustible material along the line of the road, it is a fact from which they may find negligence on the part of the defendant.

4. That if the jury believe from the evidence in the cause that the fire originated from the defendant's engine, then to exonerate the defendant from negligence, they must find that the defendant exercised reasonable care and diligence to avoid, as far as practicable, injury to property along the line of its road, by having its engines properly constructed and in good condition, and placed in the charge of skilful and prudent persons, and managed by such persons in a skilful and prudent manner.

The defendant offered the seven following prayers, with the exception of the parts in brackets, contained in the third and sixth prayers:

1. That the plaintiff is not entitled to recover in this case, although the jury may believe the fire was occasioned

by the locomotive of the defendant, if the jury believe the defendant's engine which occasioned such fire, (if the jury does so believe) was at the time properly constructed, in good order, with suitable fixtures for preventing injuries by fire, with a spark-arrester, such as was known by defendant to have been used and approved of and best calculated to prevent the emission of sparks, while allowing sufficient draft to create steam enough to propel the engine at proper speed ; and that the said locomotive was used at the time on the road with such care and diligence as would be exercised by skilful, prudent and discreet persons having control of the engine, regarding their duty to the company and having a proper desiré to avoid injuring property along the road.

2. That the burden of proof is on the plaintiff to show that the fire complained of in this case originated from defendant's engine, and the plaintiff is not entitled to recover unless the jury believes from all the evidence in the case that the fire did so originate, and unless they further believe that the plaintiff did not contribute in any way to the injury complained of, by the want of reasonable care and prudence on his part.

3. That under the pleadings and evidence in this case, if the jury believe from the evidence that the fire complained of in this case started from a point on defendant's property near its railroad and opposite Slider's fields, spoken of by the witnesses, and that the fire burned up the westerly side of the mountain called Town Hill in the direction of Daniel Ryan's property on the top of said mountain, if they so find, and continued so to burn until it reached the top of the mountain or. thereabouts, and that Mertens and Hein owned the land from the railroad to said Ryan's property, and that said Ryan then raked a path and turned the fire along the top of the mountain towards Frederick Brinkman's line, but on Mertens and Hein's land, and that said Frederick Brinkman fought

the fire off his property and kept it on Mertens and Hein's property, and along the top of the mountain towards plaintiff's line, and that plaintiff and others assisting him, if they so find, then fought the fire and led it along the top of the mountain—and then partly down the mountain on Mertens and Hein's property, and then without knowing where they were, left the fire about three o'clock in the morning and plaintiff returned to his house on the east side of the mountain, if the jury so find, and that afterwards a high wind arose and blew the fire to plaintiff's property on the top of the mountain, and that the fire then did the injury complained of about noon of that day, and if they further believe from the evidence that, [but for the direction so given to the said fire in the manner heretofore described, the injury complained of would not have occurred] and that the place where the bark was burnt was in the course taken by the fire about two and three miles from where the fire started, and that the injury complained of occurred two or three days after the fire started, and that it is a mile or more from where the fire started to the top of the mountain where said Ryan fought and turned the fire, if they so find, and that it is a mile or more from that place to where plaintiff and those with him, left the fire at three o'clock in the morning of the day of the injury complained of, then the plaintiff is not entitled to recover, even though the jury may believe from the evidence that the defendant's engine started the fire complained of.

4. That if the jury believe from the evidence that there were several fires burning at the said time in the direction of plaintiff's property when the injury complained of took place, then they cannot find for the plaintiff under the pleadings and evidence in this case, unless they believe that the fire which did the injury complained of was started by defendant, and the burden of proof is on the plaintiff to show that it was so started.

5. That if the jury find that the plaintiff's bark and timber and hoop poles were burnt by a fire which was started by sparks or fire from the defendant's locomotive, and further find that the defendant exercised reasonable care and prudence in the running of its engine, and that its engine was properly constructed and in good condition, and managed by a competent and skilful engineer in a careful and prudent manner, and that its road bed was in a proper condition, then their verdict must be for the defendant.

6. And further that if the jury find that defendant's engine was negligently permitted to set fire to the leaves and bushes near its road about the last of April, 1884, and said fire spread toward the plaintiff's land, and that the plaintiff and others cleaned off the leaves along a path in front of the advancing fire and set fire along the side of said path next to the first mentioned fire, and the fires so started by the plaintiff and others, got away from or beyond their control, and [that it was said last mentioned fire that] burnt the plaintiff's bark and timber and hoop poles, [and that for such back or artificial fires so started by the plaintiff, if the jury shall so find, the injuries complained of would not have occurred] then their verdict must be for the defendant.

7. And further that if the jury find that the defendant's engine started a fire in the leaves which might have spread to the plaintiff's land, and burnt his bark, timber and hoop poles, and that about the same time the plaintiff and others also started fires which might have spread to the plaintiff's land and burnt his bark, timber and hoop poles, then the burden of proof is on the plaintiff to show that the fire started by the defendant's engine did the damage complained of, and unless he does so show to the satisfaction of the jury their verdict must be for the defendant.

The Court (HOFFMAN, J.,) granted the plaintiff's prayers and the defendant's first, second and fourth prayers, and

granted the defendant's third and sixth prayers with modifications [the modifications being in brackets] and rejected the defendant's fifth and seventh prayers.

The defendant excepted, and also excepted specially to the plaintiff's prayers, because there was no evidence legally sufficient to show that the defendant's engine started the fire complained of.

The verdict and judgment being in favor of the plaintiff, the defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, and BRYAN, J.

*A. Hunter Boyd*, and *Ferdinand Williams*, for the appellant.

*Benjamin A. Richmond*, and *William Brace*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

In the Circuit Court for Allegany County an action was instituted by the appellee against the appellant for the recovery of damages; the plaintiff averring in his declaration that he was the owner of a large quantity of tan-bark, corded wood, and other property, and that said property was destroyed by combustion resulting from a fire occasioned by the engines and locomotives of the defendant being negligently run and controlled on the line of its road. The evidence offered by the plaintiff tended to prove that the defendant owned and operated a railroad constructed through a country covered with forest, at the foot of Green Ridge Mountain ; and that, on the 28th day of April, 1884, a fire was originated near said road by sparks from defendant's engine, which first extended to the lands of one Ryan and Frederick Brinkman, who in their efforts to avert the danger "trailed the fire" along

the mountain ridge, more than a mile from their lands to the plaintiff's land; that the plaintiff, assisted by others, encountered and resisted the conflagration in the same manner until about three o'clock in the morning, when, supposing that the flames had been subdued, he retired and returned at ten o'clock, about two hours after which time a fresh wind sprang up, carrying fire from the burning debris which ignited and destroyed the plaintiff's property, and thus occasioned the claim for damages which forms the foundation for this suit. The plaintiff offered evidence tending to prove that the method employed to subdue the fire was necessary and proper. He offered no direct proof that the fire was caused by the engine, but proved that the fire was seen some twenty feet from the track of the road about three hours after the engine had passed that point. The plaintiff also proved that within a month previous to the 28th day of April, 1884, said engine had been seen to start two other fires, and that on three occasions within that time, glowing cinders were observed dropping from said engine.

The defendant offered to prove, that among the farmers in that region, it was a custom or usage to set fire to the leaves and underbush at that season so as to improve the pasturage; and that annually during many years before the defendant's road was built, such fires had been started in that valley and the adjacent mountains. Upon objection from the plaintiff, the Court refused to admit such testimony, but permitted the defendant to prove the existence of any other fires which had been started in that vicinity within a month before or after that which, the plaintiff alleged, was the cause of the destruction of his property.

The refusal of the Court to admit evidence of a usage or custom as aforesaid, forms the foundation of the defendant's first bill of exception. The defendant also excepted to the ruling of the Court in granting the prayers of the plain-

tiff, and in rejecting its fifth and seventh prayers, and in modifying its third and sixth prayers. The defendant excepted especially to the plaintiff's prayers, assigning as a reason that there was no evidence legally sufficient to show that the defendant's engine started the fire mentioned in the declaration.

The question presented for determination in the first bill of exception relates to the propriety of the Court's ruling in rejecting proof of usage and custom among the farmers in that locality. The fact of the existence of a certain custom or usage is sometimes admissible in evidence in an action involving the construction of contracts, because agreements may be supposed to have been made with reference to such known and established usages and customs as are not in conflict with the law of the land. Indeed as the common law is but an embodiment of ancient usages and customs having an extended and general application, the customs and usages of a neighborhood may, to some degree, be regarded as a species of local common law. But in actions of this nature, evidence of usage or custom does not seem to be admissible. No authority has been cited to show that such evidence is proper and pertinent to the issue ; and the decision of this Court seems to be adverse to the adduction of such proof. *Baltimore & Ohio R. R. Co. vs. Shipley,* 39 *Md.* 255.

The four prayers of the plaintiff which were granted by the Court and excepted to by the defendant, are so slightly variant that they might with apparent facility, have been condensed and embodied in a single instruction. The first enunciates the proposition that if fire was communicated by defendant's engine, there must be a finding for plaintiff, unless there was no negligence on the part of the defendant, or unless there was negligence on the part of the plaintiff. The second prayer declares that fire so communicated is *prima facie* evidence of negligence on the part of the defendant. In the third prayer the jury are

told that if the defendant's engine, at the time of the fire complained of, "habitually scattered sparks," so as to endanger combustible material along the line of the road, it is a fact from which they may find negligence on the part of the defendant. In the fourth prayer the jury are told that if they believe from the evidence that the fire originated from the defendant's engine, then in order to exonerate the defendant, they must find that said defendant exercised reasonable care and diligence, by having its engine properly constructed and in the charge of skilful and proper persons. The first, second and fourth of these prayers are based upon the hypothesis that the jury believe that the fire was communicated by the defendant's engine. When a fire so originates, the law creates the presumption of negligence, and the *onus probandi* is on the defendant to show the contrary. *Md. Code, Art.* 77, *sec.* 1.

This Court has said that "it is not incumbent on the plaintiff, in an action of this kind, to prove that the fire was caused by the defendant's negligence; but' the *onus* is cast on the defendant to disprove negligence on its part, or rather to show affirmatively that it has used reasonable care to prevent causing injury by fire from its engines." *Annapolis & E. R. R. Co. vs. Gantt*, 39 *Md.*, 137; *B. & O. R. R. Co. vs. Shipley*, 39 *Md.*, 251; *Balto. & Susquehanna R. R. vs. Woodruff*, 4 *Md.*, 242.

In the plaintiff's third prayer the jury are told that if they believe from the evidence that the engine "habitually scattered sparks to such an extent as to endanger combustible material along the line of the road," it is a fact from which they may find negligence on the part of the defendant. In *Gantt's Case*, in 39 *Md.*, 135, a witness stated that he had seen the engines "scattering large sparks in passing, capable of setting fire to combustible' articles along the road; and that about a week before, he had put out a fire in the leaves caused by these sparks; but he could not say that he had ever seen any such sparks

from the locomotive that was drawing the freight train on the morning of the fire."

Chief Judge BARTOL, in delivering the opinion of the Court, said :

"We entertain no doubt that this was competent and admissible evidence, both for the purpose of proving that the fire in question was occasioned by the locomotives, and as tending to prove negligence on the part of the defendant, in the construction and management of its engines." The learned Chief Judge in support of these propositions cited the case of *Piggot vs. The Easter Counties Railway Co.,* 54 *Eng. C. L.,* 228 ; and also referred to a number of American cases in which the same principle is enunciated.

The fifth prayer of the appellant was properly rejected by the Court, because it contained no instruction which had not already been given to the jury in appellant's first prayer which had been granted. This remark is also pertinent to the appellant's seventh prayer, which was properly rejected, because it announced nothing more than that which was completely covered by his second prayer which was granted. The first and fourth prayers of the appellee also required the jury to find that the fire originated from the appellant's engine, before they could find a verdict for appellee. The reproduction and repeated presentation of the same legal proposition in various prayers by a mere transposition of phraseology, are not only unnecessary, but manifestly tend to confusion, and should not therefore be encouraged by judicial sanction.

Neither the third nor the sixth prayer of the appellant could be granted as originally presented, and even when considered as modified by the Court, it may well be doubted whether the legal maxim *ad questiones facti non respondent judices,* has not been ignored. But if error in his respect has been committed, it operated in appellant's favor, and he has no just cause for complaint. The questions presented by these two prayers have been settled by

adjudication.　In the case of the *Annapolis & Elkridge R. R. Co. vs. Gantt*, 39 *Md.*, 144, the Court said:

"In a case where the fire has not been communicated directly to the plaintiff's property by sparks or cinders from the locomotive, as where it has spread from its first beginning, and thus been communicated indirectly to the plaintiff's property, it is a question proper to be submitted to the jury to determine, from all the facts of the case, whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by some intervening force or power, which stands naturally as the cause of the misfortune."

The doctrine here announced is recognized and sanctioned by the decisions in other States.　*Oil Creek & Allegheny R. R. Co. vs. Keighron*, 74 *Pa. St.*, 316 ; *Perley vs. Eastern R. R. Co.*, 98 *Mass.*, 419 ; *Metallic Compression Casting Co. vs. Fitchburg R. R. Co.* 109 *Mass.*, 278 ; *Higgins vs. Dewey*, 107 *Mass.*, 496; *White vs. Colorado Central R. R. Co.*, 5 *Dillon*, 428.

In the third and sixth prayers of the appellant the Court is asked to say to the jury that if there were certain intervening forces in operation as specifically set forth in the instructions sought to be obtained, then the plaintiff was not entitled to recover.　Now in the case just referred to in 39 *Md.* this Court has said that the jury must "determine from all the facts in the case, whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by some intervening force," &c., &c.　It seems quite clear that the Court was right in refusing to grant these prayers as presented by the appellant.

There being no perceptible error in any of the rulings of the Court below which could injuriously affect the appellant, the judgment in this cause should be affirmed.

*Judgment affirmed.*

(Decided 24th June, 1885.)