# THE WESTERN MARYLAND RAILWAY COMPANY,
### A CORPORATION,

### vs.

# LANCELOT JACQUES.

*Experts: may not testify as such to amount of damages in dollars and cents.   Fire: destruction of timber lands;
value before and after.*

In an action for damages for the burning of timber lands it is inadmissible to introduce in evidence the estimation of lumbermen, as experts to prove the amount of loss in dollars and cents, as that is a question for the determination of the jury exclusively.                                         p. 403

In such a case, however, evidence may be given of the value of the property before the injury and its value afterwards, provided it be by witnesses who themselves have a trustworthy and personal knowledge of the facts.                  ‘p. 404

In cases where fire is communicated to the plaintiff's land not directly from the act or negligence of the defendant, but is communicated across other property, the question to be submitted to the jury for its determination from all the facts is, whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by some intervening cause.                                p. 405

*Decided December 13th, 1916.*

Appeal from the Circuit Court for Frederick County. (WORTHINGTON and PETER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Milton G. Urner, Jr.,* and *Benjamin A. Richmond* (with whom was *Charles A. Little* on the brief), for the appellant.

*Elias B. Hartle* (with whom was *Joseph W. Wolfinger* and *D. P. Buckey* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal is from a judgment recovered for injuries al-alleged to have been caused by fire to the timber land of the appellee.

The record contains fourteen exceptions to the rulings of the Court upon questions of evidence and one to the ruling upon the prayers.

The exceptions to the testimony are very similar in import and all practically involve the same legal proposition, with the exception of the first, which is abandoned, and a brief statement of the facts will clarify the points raised.

The tracts burned over consisted of three lots of mountain timber land comprising about seventy-six acres, and located about one mile to a mile and a half from the right of way of the appellant. The lots were burned over on the 5th day of November, 1914, and it was alleged, and testimony ad-mitted tending to prove it, that the fire which burned over them started on the appellant's right of way from cinders emitted from a locomotive of the appellant, and was com-municated to the appellee's land, causing the damage alleged. The appellee produced several witnesses, of whom a number qualified as experts in timber and timber lands, by whom he sought to establish the extent of the damages, and it is in reference to their testimony that the exceptions from two to fourteen, inclusive, arise.

The appellee testified that he had not been on one of the lots until after the fire since he had purchased it, eleven years before, but had been hunting on the other two every

402    WESTERN MD. R. R. CO. vs. JACQUES.

Opinion of the Court.                              [129

fall, and that, in his opinion, fires burned over every year the
lot he had not visited. The witness Hahn, produced by the
appellee, testified that there were fires previously over the
mountain, but that he could not say whether or not they
burned over the lots in question, because he did not know
their exact location. The witness Cline, produced by the
appellee, testified that he knew the location of two of the lots
and said: "There were other fires on these lots during the
nine years before November 5th, 1914; while I lived up
there a fire went over the fourteen acre lot and the thirty-
five acre lot; there was another fire a few years ago." Robert
Cease testified in behalf of the appellee, that he had seen
other fires on the mountain in the same locality as this fire
at different times before, but were not serious as it. The wit-
ness Charles Wolf testified that he had gone over the lots
about a year after the fire in company with the appellee and
two other men and examined the condition of the timber;
and, in testifying as to the fourteen acre lot, was asked: "Q.
To what extent was this timber injured per acre, in your
judgment?", and answered, "I think it was injured $10.00
per acre." The appellant made a motion to strike out this
answer but the Court refused to do so, after examining the
witness as to when he had been there before and eliciting the
information that he had not been over the lot since twelve or
fourteen years before; and this refusal forms the second ex-
ception. The same witness after testifying as to the condi-
tion of the timber on the thirty-five acre lot, as of the day he
had just previously testified to, placed the value of the land
before the fire at from twenty to thirty dollars an acre, and
was then asked by the Court: "Q. You think it was dam-
aged to the extent of one-half of its value?" Over the ob-
jection of the appellant he was permitted to answer "Nearly
so," and this forms the third exception. He further testified
that the previous time he had been on this tract was ten or
twelve years before the fire. He also testified that he did not
know, whether or not, the tract had been burned over during
these intervening years.

The questions, the subject of the other exceptions, were those asked several other witnesses in attempting to prove the values of the several lots prior, and subsequent, to the fire. None of these witnesses had seen the lots within twelve years before the day of the fire and had not visited them until a year after the fire and some had never seen them before the day, a year after the fire, when they examined their condition. Two of the questions will serve to show the objection to all. "Q. Assuming that the damage that you saw to this timber from fire occurred on the 5th day of November, 1914, what, in your opinion, was the value of that timber per acre on the 4th day of November, 1914?" "Q. Assuming it was injured by the fire on the 5th day of November, 1914, what was it worth immediately after the fire?"

Taking up for consideration first the second exception, where the witness was permitted to give in dollars and cents his estimate of the damage; in *Carter* v. *Md. & Pa. R. R. Co.,* 112 Md. 599, in disposing of a similar question, this Court said that it had so many times, recently, declared testimony of this character to be inadmissible, that it would serve no good purpose to enlarge upon the reasons which led it to that conclusion, and cited *Stumore* v. *Shaw,* 68 Md. 19; *Bell. R. R. Co.* v. *Sattler,* 100 Md. 333 and 102 Md. 595; *W. U. Tel. Co.* v. *Ring,* 102 Md. 681; *Con. Gas. Co.* v. *Smith,* 109 Md. 203. This ruling has again been approved and emphasized as late as in *Park Land Corp.* v. *M. & C. C. of Baltimore,* 128 Md. 611, and therefore we must hold that this ruling constituted error.

The question in the third exception should not have been asked for the same reasons that made the second exception good. It is apparent that this was but another way of allowing an expert to decide the very question the jury was to pass upon; or as was said in *Bell R. R. Co.* v. *Sattler,* 100 Md. 333: "To allow the expert to give such testimony not only puts him in the place of the jury, but permits him to indulge in mere speculation."

The other exceptions, which will be treated as a whole, present a somewhat different question, but still relate to expert testimony.

It is apparent, that, by these questions, the appellee sought to establish the damages, by following the method of offering testimony, tending to show the value, before and after, the injury complained of. With this method there can not now be any objection, for it has been the method generally adopted in cases of this character. *Belt R. R. Co.* v. *Sattler, supra.* We say there is no objection to this plan, but the questions here involved attempt to fix the value, not on facts within the knowledge of the witnesses, not upon facts established by other testimony in the case, but as it appears to us on assumptions, contrary to facts, which had already been testified to before the jury by the appellee's own witnesses. As we have already pointed out, some of these witnesses on the day they examined the timber had not seen it for thirteen or fourteen years and some never at all before. Witnesses had testified that in the period before this fire other fires had been in the locality of this timber, although they could not state with positiveness that it had been over these lots, because of not knowing with exactness the lines of the lots, and one witness had stated positively that during the period of nine years before this fire, other fires had actually burned over this same timber. If expert testimony is to be of any aid in assisting a jury in forming their verdict, and this is the only theory upon which it is admitted at all, how, then, is testimony based upon an assumption contrary to the evidence before the jury, to aid them? A witness, who has already testified that he had not seen the property for about fourteen years, and who had also said that he did not know, whether or not, fires had passed over it during that time, is asked to assume that the damage he then saw was all caused by the fire of November, 1914, and to then tell the jury what in his opinion the property was worth just previous to the fire. There was no word of testimony contradicting the

testimony about the previous fires, nor a word in explanation of what they had, or might have, done. And, yet, in the face of this testimony, these experts are asked to ignore whatever damage might have been previously done, and give an opinion on value, without considering it, as an aid to the jury in reaching the correct amount of damage done. These opinions could have had no probative force, but must have been very misleading and, therefore, constituted reversible error.

The only objection raised to the instructions is, because of the refusal of the Court to rule, in substance, that although the jury should find that the fire started near the tracts of the appellant, and further find that the fire therefrom burned over the appellee's property, yet, since it burned over intervening property before it got on the appellee's property, the appellee was not entitled to recover. That the refusal so to rule was correct, is settled law in this State. The rule long in force, is, that where fire has not been directly communicated to the plaintiff's property by sparks, or other burning matter from the engine, but has been communicated across other property, the question to be submitted to the jury, to determine from all the facts, is whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by some intervening cause. The record shows that this question was properly submitted. *A. & E. R. R. Co.,* v. *Gantt,* 39 Md. 115; *P., W. & B. R. R.* v. *Constable,* 39 Md. 149; *Green Ridge R. R.* v. *Brinkman,* 64 Md. 52; *Carter* v. *Md. & Pa. R. R.,* 112 Md. 599.

For the errors in the rulings on evidence, as we have pointed out, we will reverse the judgment.

*Judgment reversed, with costs, and a new
trial awarded.*